STATE v. JAMES EARL WILSON.

(Filed 5 May, 1965.)

1. **Criminal Law §§ 85, 101—**

   The fact that the State introduces exculpatory statements of the defendant does not preclude the State from showing the facts to be otherwise, and when the State does so and introduces evidence that defendant is guilty of each essential element of the offense, the exculpatory statements do not warrant nonsuit.

2. **Automobiles § 76—**

   In a prosecution on an indictment charging that defendant was the driver of a car involved in a collision resulting in injury and death to six named persons, and failed to stop at the scene of the accident in violation of G.S. 20-166(a), and failed to give his name and address and license number to the six persons injured and killed, G.S. 20-166(c), *held*, the fact that none of the persons injured in the accident died as a result thereof does not disclose a fatal variance, it being sufficient to sustain conviction on both counts if the State introduces evidence that the persons named were injured.

3. **Indictment and Warrant § 17—**

   Even though defendant in this case relied upon an alibi, the variance of one day in the indictment and proof as to the date the offense was com-

mitted *held* not prejudicial upon the facts of the particular case, it being apparent that the defendant was not ensnared or deprived of an opportunity to adequately present his defense, and that the court gave a full, complete and correct charge upon his defense of alibi.

**4. Automobiles § 76— Evidence of defendant's identity as driver of "hit and run" car held for jury.**

Testimony of a patrolman that defendant's car stopped some 200 feet after the accident in question, that defendant got out of the vehicle from the driver's side and walked away, together with evidence that the officer examined the car immediately thereafter and found that its ignition key was gone and that it had not been "straight-wired," and that four days later, when defendant was apprehended, he had the ignition key to the car in his pocket and related that as far as he knew there were no other keys to the car, *held* sufficient to be submitted to the jury on the question of the identity of defendant as the driver of the car involved in the accident.

**5. Criminal Law § 154—**

An assignment of error must disclose the question sought to be presented without the necessity of going beyond the assignment itself. Rule of Practice in the Supreme Court No. 21.

**6. Same—**

While several exceptions may be grouped under a single assignment of error when all relate to but a single question of law, exceptions presenting different questions of law may not be grouped under a single assignment, since the assignment of error must present but a single question for consideration by the appellate court.

**7. Criminal Law § 156—**

An assignment of error to a portion of the charge containing several separate propositions must fail if the charge is correct as to any one or more of them.

APPEAL by defendant from *McKinnon, J.,* Second Week November Regular Criminal Session 1964 of WAKE.

Criminal prosecution on an indictment containing two counts: the first count charges that defendant on 22 September 1963, at and in Wake County, North Carolina, was the driver of an automobile involved in an accident and collision resulting in injuries to and deaths of James Grere, Joel Norris, Jimmie Roy Kent, Clifton Rogers, Oma Hunt, Jr., and Walter Manning Johnson, and did unlawfully, wilfully and feloniously fail immediately to stop such vehicle at the scene of the accident and collision, a violation of G.S. 20-166(a); the second count charges that defendant at the same time and place was the driver of an automobile involved in an accident and collision resulting in injuries to and deaths of the six persons named in the first count, and did unlawfully, wilfully, and feloniously fail to give his name, address, operator's license number and registration number of his automobile to

the driver and occupants of the automobiles collided with, and did unlawfully, wilfully, and feloniously fail to render to the persons injured in such accident and collision reasonable assistance, a violation of G.S. 20-166(c).

Plea: Not guilty. Verdict: Guilty as charged.

From a single judgment of imprisonment for twelve months, defendant appeals.

*Attorney General T. W. Bruton, Assistant Attorney General Ray B. Brady, and Staff Attorney L. P. Hornthal, Jr., for the State.*
*Robert L. McMillan, Jr., for defendant appellant.*

PARKER, J.   Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence.

The State's evidence consists of the testimony of one witness, George Lessard, a State highway patrolman. His evidence shows the following facts: About 2:20 a.m. on 22 September 1963 he was driving south on Highway #401 near its intersection with McCullers Road. An approaching Mercury automobile traveling north on the highway forced him off its hard-surfaced part. After the Mercury passed him, it sideswiped a Ford automobile knocking it into the path of a Pontiac automobile, causing a collision between the Ford and Pontiac. He immediately turned around and saw the Pontiac and the Ford had the highway completely blocked, and heard and saw "that there was bleeding and crying and smoke and debris." James Grere, Joel Norris, Jimmie Roy Kent, Clifton Rogers, Oma Hunt, Jr., and Walter Manning Johnson were injured in various degrees in the collision between the Ford and the Pontiac. He then looked north, and saw the Mercury, which had passed him, stopped at the Lewis Fruit Stand about 200 feet away. Lewis Fruit Stand was not open, but there was an all-night area light on its front. He saw the defendant and another person get out of the automobile, and proceed to the rear. Defendant, who was wearing a white shirt, dark pants, and a cap, got out of the automobile from the driver's side. His companion was wearing dark clothes and was bareheaded. They stayed at the rear of the Mercury for about a minute, and then left on foot toward McCullers. Neither the defendant nor his companion came back to the scene of the collision to see or to offer to give any assistance to the people who were injured in the collision between the Ford and the Pontiac. He did not see the defendant again that night. Later that night he examined the Mercury at the Lewis Fruit Stand. Its ignition key was gone, and it had not been straightwired. The Mercury had been damaged in the left rear, and there was no license plate. Three or four days after the collision he saw the de-

fendant. He asked him if he had been driving his automobile on the night of 22 September 1963, and defendant stated that he had not, that his automobile had been stolen. Defendant said that he had been off with his wife and children and had returned home about midnight the previous night; that the automobile was parked in front of his house in Raleigh, and upon returning home he did not notice his car was missing until sometime later; and that he had reported the theft to the Raleigh police station. Defendant had the key to the Mercury in his pocket at the time he talked to him, and told him that so far as he knew there were no other keys to the car. On recross-examination Lessard testified to the effect that the occurrence took place on Saturday, 21 September 1963, at 2:15 a.m., notwithstanding the fact that the indictment alleges the occurrence took place on 22 September 1963.

Defendant's testimony is to this effect: On 22 September 1963 he owned a 1956 Mercury automobile, which he had purchased from Evans' place on Blount Street about two days previously. Evans drove this automobile to his residence with a "dealer's tag," and left it in a driveway beside his house. Evans took off the "dealer's tag." He had no driver's license, and did not have a license plate for the Mercury. On Friday night, 20 September 1963, he, his wife, and children went to visit relatives in rural Wake County and returned home late at night. When he left for this visit his Mercury was at his home, and when he returned he did not notice it was missing. The next morning, 21 September 1963, around 9 a.m. he saw his Mercury was not at his home, and he went to the police station about 10:30 a.m. and reported that it was stolen. He later received word that his Mercury was at Stroud Pontiac Company in Fuquay Springs. He went there to pick it up and was asked to wait to see the patrolman, who asked him questions and arrested him. He told the patrolman that he had only one key to the Mercury, and no one else had a key so far as he knew. He was not driving this Mercury or any other automobile at the intersection of Highway #401 and McCullers Road on 21 September 1963.

Defendant's wife, who was a witness in his behalf, testified to the effect that the morning after the trip to visit relatives in rural Wake County the Mercury was missing from their home.

Defendant introduced, without objection, an official record of a complaint filed with the police department of the city of Raleigh, dated 21 September 1963, containing information that James Earl Wilson of 313 Idlewild Avenue, Raleigh, filed a complaint concerning a stolen car on that occasion.

The State offered in evidence exculpatory statements of defendant, but that does not prevent the State from showing the facts were different. *S. v. Phelps*, 242 N.C. 540, 89 S.E. 2d 132; *S. v. Simmons*, 240

N.C. 780, 83 S.E. 2d 904. Defendant's statements offered by the State exculpate defendant, but the State's case does not rest entirely on such statements.

Defendant contends, *inter alia*, that there is a fatal variance between the allegations in both counts in the indictment and the State's evidence, in that the indictment in both counts charges injuries to and deaths of the six persons named in both counts in the indictment, and that the State's evidence shows none of the six named persons were killed, but all six were injured in various degrees. G.S. 20-166(a) makes it a criminal offense for the driver of an automobile involved in an accident "resulting in injury or death" to any person to fail immediately to stop such automobile at the scene of the accident. G.S. 20-166(c) contains the words "resulting in injuries or death to any person." The State's evidence shows a lack of proper diligence on the part of the person who drafted the indictment in alleging that the six persons therein named were killed in the accident, when none were killed. However, if the State satisfied the jury beyond a reasonable doubt that defendant was the driver of an automobile involved in an accident resulting in injuries to the six named persons in the indictment, and did unlawfully, wilfully, and feloniously fail to stop such automobile at the scene of the accident, it would be sufficient to justify the conviction of the defendant on the first count in the indictment, and it was not necessary for the State to prove that all of the six named persons were killed, as alleged in the indictment. *S. v. Locklear,* 44 N.C. 205; *S. v. Van Doran,* 109 N.C. 864, 14 S.E. 32; *S. v. O'Keefe,* 263 N.C. 53, 138 S.E. 2d 767. In respect to the second count in the indictment, if the State proved that the six named persons were injured in the collision, it was not necessary for the State to prove that all of them were killed. This contention of defendant is without merit.

Defendant further contends that the indictment alleges the offenses charged in its two counts occurred on 22 September 1963; that the patrolman testified on recross-examination that the offenses occurred on Saturday, 21 September 1963, at 2:15 a.m., notwithstanding the fact that the indictment alleges the offenses took place on 22 September 1963; that his defense was an alibi, and consequently the time charged in the indictment was an essential element of the offenses charged, and because of this variance between allegation and proof, he is entitled to a nonsuit. The time alleged in an indictment is not usually an essential ingredient of the offense charged, and the State ordinarily may prove that it was committed on some other date. G.S. 15-155; *S. v. Tessnear,* 254 N.C. 211, 118 S.E. 2d 393. "But this salutary rule, preventing a defendant who does not rely on time as a defense from using a discrepancy between the time named in the bill and the time

shown by the evidence for the State, cannot be used to ensnare a defendant and thereby deprive him of an opportunity to adequately present his defense." *S. v. Whittemore*, 255 N.C. 583, 592, 122 S.E. 2d 396, 403. It may be difficult to conceive of a case where the time of the commission of a crime is not material to the defense of alibi. However, under the facts of this particular case as presented by the State showing the offenses charged in the indictment occurred on Saturday, 21 September 1963, at 2:15 a.m. instead of on 22 September 1963 as charged in the indictment, the defendant was not ensnared and thereby deprived of an opportunity to present adequately his defense of an alibi as shown by his evidence, and this mere variance between allegations in the indictment and evidence of the State does not entitle him to a judgment of nonsuit. A reading of the trial judge's charge here shows that he did not fall into error, as the trial judge did in *S. v. Whittemore, supra,* when he in his charge "in effect told them [the jury] that the date charged was immaterial."

Considering the State's evidence in the light most favorable to it, and considering defendant's evidence favorable to it, *S. v. Avent*, 253 N.C. 580, 594, 118 S.E. 2d 47, 57, it would permit a jury to find these facts: On 20 and 21 September 1963, and later, defendant owned a Mercury automobile. About 2:15 a.m. on 21 September 1963 this Mercury was involved in an accident resulting in injuries to the six persons named in the indictment, and the driver of the Mercury did not immediately stop it at the scene of the accident. The Mercury stopped some 200 feet away at the Lewis Fruit Stand, which at the time had an all-night area light on its front. When it stopped, defendant got out of it from the driver's side, stayed there about a minute, and left on foot toward McCullers. He never went to the scene where the six persons were injured. Later that night the State highway patrolman, who saw the accident, went to the Mercury, examined it, and found that its ignition key was gone, and that it had not been straight-wired. Three or four days later the patrolman talked to defendant, and at that time defendant had the ignition key to the Mercury in his pocket, and said, so far as he knew, there were no other keys to the Mercury. That it is a fair inference from this evidence that the defendant was the driver of the Mercury at the time it was involved in an accident resulting in injuries to the six persons named in the indictment. Defendant reported to the police in Raleigh some eight hours after the accident that his Mercury had been stolen. The trial court properly denied defendant's motion for judgment of compulsory nonsuit.

Defendant has no exceptions to the evidence. He assigns as error "Exceptions 3 through 6 (R. pp. 21-24, 26, 27) inclusive, all relating to the judge's charge." This assignment of error does not comply with

our rules, in that it does not disclose the questions sought to be presented without the necessity of going beyond the assignment of error itself. Rule 21, Rules of Practice in the Supreme Court, 254 N.C. 785; *Lowie & Co. v. Atkins,* 245 N.C. 98, 95 S.E. 2d 271. It is elementary learning that an assignment of error must present a single question of law for consideration by an appellate court. But it is entirely proper to group more than one exception under one assignment, when all the exceptions relate to a single question of law. *S. v. Atkins,* 242 N.C. 294, 87 S.E. 2d 507. In the charge here, exception 3 relates to the court's charge in respect to an alibi, and the variance in time between the time of the offenses alleged in the indictment and the State's proof; exception 4 relates to the court's charge to the effect that the State is not required to prove that both injuries and deaths of the six persons named in the indictment ensued from the accident and collision; exception 5 relates to the court's charge in respect to an alibi; and exception 6 relates to the court's charge in respect to the definition of what constitutes reasonable doubt. "Where there is a single assignment of error based upon several exceptions to several distinct parts of the judge's charge, and one of the parts excepted to is correct, the assignment must fail." *S. v. Atkins, supra,* and cases cited therein. It is manifest from a reading of the judge's charge that his definition of reasonable doubt as given to the jury is in strict accord with decision after decision of this Court. The part of the charge challenged by defendant's exception 4 is correct, as set forth above. The parts of his charge challenged by defendant's exceptions 3 and 5 are a fair and accurate statement of the law in respect to an alibi, as set forth in *S. v. Spencer,* 256 N.C. 487, 124 S.E. 2d 175, and are comprehensive and long instructions in respect to the variance between the time of the commission of the offenses as alleged in the indictment and as shown by the State highway patrolman's testimony on recross-examination, where defendant's defense and evidence is an alibi, and·where the exact time of the commission of the offenses was material and essential to defendant's defense. A careful study of these comprehensive and long instructions shows that the jury was carefully instructed that defendant's evidence of an alibi was not to be disregarded, that they did not deprive him of his defense of an alibi, and that no error prejudicial to defendant appears under the factual situation here. A careful reading of the judge's charge in its entirety shows no error that would justify a new trial.

Defendant's last and third assignment ʼof error is as follows: (1) The court erred in denying his motion to set aside the verdict; (2) the court erred in denying his motion for a new trial; and (3) the court erred in denying his motion in arrest of judgment. These exceptions are without merit and are overruled.

In the trial below we find
No error.