STATE OF NORTH CAROLINA v. BRUCE LILLEY
No. 682SC381

(Filed 18 December 1968)

1. Criminal Law § 115— submission of lesser degrees of the crime

Where there is evidence tending to show the commission of a lesser offense, the court, of its own motion, should submit such offense to the jury for its determination. G.S. 15-170.

2. Homicide § 6— involuntary manslaughter defined

Involuntary manslaughter is the unlawful killing of a human being unintentionally and without malice but proximately resulting from the commission of an unlawful act not amounting to a felony, or some act done in an unlawful or culpably negligent manner, and where fatal consequences of the negligent act were not improbable under all the facts existent at the time.

3. Homicide § 30— submission of issue of involuntary manslaughter

In a prosecution for second degree murder or manslaughter in which defendant offered evidence tending to show that he and deceased had been drinking together, that there were no ill feelings between them, that defendant got his rifle for the purpose of killing deer which were eating his crops, and that while defendant was playing with the rifle, it discharged and killed deceased, failure of the court to submit the issue of defendant's guilt of the lesser offense of involuntary manslaughter is fatal error notwithstanding the sentence imposed was within the maximum allowed for involuntary manslaughter.

4. Indictment and Warrant § 17— homicide prosecution — variance between allegation and proof as to date of offense

In a homicide prosecution there is no fatal variance between an indictment charging that the offense was committed on 3 April 1968 and

proof that the incident occurred on 30 April 1968, time not being of the essence of the offense charged, where the statute of limitations was not involved, defendant did not rely on an alibi, and the discrepancy was not used to ensnare defendant and thereby deprive him of an adequate opportunity to present his defense.

APPEAL by defendant from *Cohoon, J.,* from the June 1968 Criminal Session of Superior Court of MARTIN.

Defendant was tried upon a bill of indictment charging him with the murder of Irving Bembridge. Upon the call of the case for trial, the solicitor announced that he would not ask for a verdict of guilty of murder in the first degree but would seek a verdict of guilty of murder in the second degree or manslaughter.

On the night of 30 April 1968, the defendant, defendant's wife, Irving Bembridge, and Dock Clifton Davenport were in the defendant's home. Davenport had retired to a bedroom just prior to the time the incident in question occurred. The defendant and Bembridge, defendant's half-brother, had been drinking together during the day, but there was no showing of any ill feelings between them. The defendant testified that in the process of moving his rifle so that he could sit in a chair, he started "messing" with it; that as he did this, the rifle went off, killing Bembridge. Davenport, as a witness for the State, testified that he heard the defendant go into the dining room and get his rifle; that he heard him eject the bullets from it. He also testified that he heard the following conversation: ⠀⠀⠀⠀·

Defendant asked Bembridge, "Who do you think is boss . . .?"

Bembridge answered, "You are."

Defendant then said, "Do you think I will shoot you?"

Bembridge answered, "Yes." "Please don't."

Davenport then heard a shot.

There was other evidence showing that the witness Davenport had stated on another occasion that he had been awakened by the defendant's wife after the shooting had occurred.

The defendant appeals from a verdict of "guilty of manslaughter" and a sentence of imprisonment for a period of ten years.

*Attorney General T. W. Bruton and Assistant Attorney General Millard R. Rich for the State.*

*Leroy Scott for defendant appellant.*

MORRIS, J.

Defendant contends that the court's failure to instruct the jury on involuntary manslaughter constitutes prejudicial error.

[1]    In *State v. Wenrich,* 251 N.C. 460, 111 S.E. 2d 582, the North Carolina Supreme Court held that where there is evidence tending to show the commission of a lesser offense, the court, of its own motion, should submit such offense to the jury for its own determination. G.S. 15-170 provides that a person may be convicted of the charge in the indictment or of a less degree of the same crime.

> "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545.

[2, 3]    Testimony of Dock Clifton Davenport, when taken in the light most favorable to the State, would tend to show that the defendant intentionally shot the deceased. Based on this evidence the trial court correctly submitted the questions of second-degree murder and voluntary manslaughter to the jury. However, we feel that the trial judge should have also submitted the question of involuntary manslaughter to the jury. There was evidence offered at the trial, which if believed by the jury, would tend to show that the defendant and the deceased had been drinking together before the incident occurred and that there were no ill feelings between them; that they had planned to go to the defendant's field for the purpose of killing deer which were eating the defendant's crops, and for this purpose the defendant had gotten his rifle. The defendant ejected the bullets from the rifle. The evidence, if believed, would tend to show that the rifle was then placed in a chair so that, later, the defendant had to move it in order to sit down. In the process of moving the rifle, the defendant started playing with it, and it went off, killing Irving Bembridge, the defendant's half-brother.

> "Involuntary manslaughter is the unlawful killing of a human being unintentionally and without malice but proximately resulting from the commission of an unlawful act not amounting to a felony, or some act done in an unlawful or culpably negligent manner (*S. v. Durham,* 201 N.C. 724, 161 S.E. 398; *S. v. Stansell,* 203 N.C. 69, 164 S.E. 580), and where fatal consequences of the negligent act were not improbable under all the facts existent at the time. . . . In *S. v. Rountree, supra* (181

N.C. 535, 106 S.E. 669), it was said that 'Culpable negligence under the criminal law is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.'" *State v. Williams,* 231 N.C. 214, 56 S.E. 2d 574.

Also, see *State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485; *State v. Neal,* 248 N.C. 544, 103 S.E. 2d 722; and *State v. Satterfield,* 198 N.C. 682, 153 S.E. 155.

Although the sentence imposed by the trial court was within the maximum allowed upon a conviction of involuntary manslaughter, *State v. Adams,* 266 N.C. 406, 146 S.E. 2d 505, we feel that it was prejudicial error for the trial judge not to submit the question of involuntary manslaughter to the jury. Originally, G.S. 14-18 provided:

"If any person shall commit the crime of manslaughter he shall be punished by imprisonment in the county jail or State prison for not less than four months nor more than twenty years."

In 1933 the following proviso was added:

"Provided, however, that in cases of involuntary manslaughter, the punishment shall be in the discretion of the court, and the defendant may be fined or imprisoned, or both."

Apparently, before this proviso, the punishment prescribed for a conviction of manslaughter was without any consideration of whether it was voluntary or involuntary manslaughter. Speaking on this new addition to G.S. 14-18, our Supreme Court in *State v. Dunn,* 208 N.C. 333, 180 S.E. 708, said:

". . . the proviso did not purport to create a new crime, to wit, that of involuntary manslaughter. . . . It is not thought that by enacting the proviso the Legislature intended to repeal the manslaughter statute and to set up in its stead involuntary manslaughter as a misdemeanor. Indeed, the Court is of the opinion, and so holds, that the proviso was intended and designed to mitigate the punishment in cases of involuntary manslaughter, and to commit such punishment to the sound discretion of the trial judge."

The jury may have found the defendant guilty of involuntary manslaughter, and, if so, he had the right to have this considered as a mitigating factor in the punishment he was to receive. In our opinion the failure of the court to charge on involuntary manslaughter constituted reversible error entitling defendant to a new trial.

The defendant's motion for a directed verdict made at the end

of the State's evidence and at the end of all the evidence was properly overruled.

> "The evidence, taken in the light most favorable to the State, was sufficient to support a finding that the defendant was handling the gun in a culpably negligent manner at the time it fired and killed Jones. . . . Any careless and reckless use of a loaded gun which jeopardizes the safety of another is unlawful, and if death results therefrom it is an unlawful homicide." *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354.

Also, see *State v. Hovis*, 233 N.C. 359, 64 S.E. 2d 564, and G.S. 14-34.

[4]   The defendant argues that there is a fatal variance between the indictment and the evidence offered at the trial. The indictment shows that the offense was committed on 3 April 1968, while the proof offered at the trial showed that the incident occurred on 30 April 1968. G.S. 15-155 provides that a judgment upon an indictment shall not be reversed for ". . . omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened . . ." The statute of limitations was not involved and the defendant did not rely on an alibi. This discrepancy was not used to ensnare the defendant nor did it deprive him of an opportunity to adequately present his defense. *State v. Wilson*, 264 N.C. 373, 141 S.E. 2d 801. Time was not of the essence of the offense charged. *State v. Gore*, 207 N.C. 618, 178 S.E. 209. The variance between the time shown in the indictment and the time shown by the proof was not fatal.

The defendant brings forth several assignments of error in his brief, many of them pertaining to the admission of evidence at the trial. Because these same questions are not likely to arise in a new trial, and because we deem it desirable to comment on the evidence only insofar as is necessary for the sake of clarity, *MacClure v. Casualty Co.*, 229 N.C. 305, 49 S.E. 2d 742, we have not discussed the assignments of error relating to the admission of evidence.

For the reason stated herein, there must be a

New trial.

MALLARD, C.J., and CAMPBELL, J., concur.