STATE OF NORTH CAROLINA v. JAMES TESENAIR

No. 7727SC872

(Filed 7 March 1978)

1. **Indictment and Warrant § 12.2; False Pretense § 2— amendment of indictment—date of offense**

The trial court did not err in ordering that an indictment for obtaining property by false pretense be amended to allege that the offense occurred on 18 November 1976 instead of 18 November 1977, a date subsequent to the

trial, since (1) time was not of the essence of the crime charged, and by virtue of G.S. 15-155 it was not necessary to correct the obvious clerical error in stating the time of the offense in the indictment, (2) the change effected no substantial alteration in the charge set forth in the indictment and therefore was not an amendment prohibited by G.S. 15A-923(e), and (3) neither the mistake in the date originally alleged nor its correction by the court hampered defendant in presenting his defense that he made no false representation.

**2. False Pretense § 3.1— variance as to date of offense**

There was no fatal variance between an indictment alleging an offense of obtaining property by false pretense occurred on 18 November and evidence that defendant opened an account by misrepresenting his identity on 14 October since (1) time was not of the essence of the offense charged, and (2) the evidence showed defendant received goods as a result of his false pretense on 14 October, 2 November and 18 November, one being the exact day alleged in the indictment.

**3. False Pretense § 3.1— obtaining goods on credit by misrepresenting identity**

The crime of obtaining property by means of a false pretense may be committed when one obtains goods on credit by a wilful misrepresentation of his identity, quite apart from any intention of the defendant ultimately to pay or not to pay.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 23 June 1977 in Superior Court, GASTON County. Heard in the Court of Appeals 8 February 1978.

Defendant was tried on his plea of not guilty to an indictment charging him with obtaining property by means of a false pretense, a violation of G.S. 14-100.

The State presented evidence to show: Defendant James Tesenair approached Frank L. Rhyne at Rhyne's Decorative Center, Inc., introducing himself as Boyce Tesenair. Defendant told Rhyne that he was going to establish a painting business and that he wanted to make arrangements for purchasing paint and supplies on credit. Rhyne then checked with the Credit Bureau and discovered that Boyce Tesenair had a good credit rating. Based upon that information, Rhyne permitted defendant to purchase paint and supplies on credit. Defendant received goods from Rhyne's Decorative Center on 14 October, 2 November, and 18 November 1976. Pursuant to defendant's instructions, bills for the merchandise were addressed to Tesenair Painting.

Boyce Tesenair is defendant's brother, and he testified that he did not give defendant permission to use his name to open the

charge account at Rhyne's Decorative Center. In fact, Boyce knew nothing about the matter until he received a phone call from either Mr. Rhyne or Mr. Rhyne's son informing him that he owed them some money.

Defendant testified, admitting he purchased the goods on credit and failed to pay for them, but denying he misrepresented his identity.

The jury found defendant guilty as charged. From judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten by Associate Attorney Lucien Capone III for the State.*

*Harris and Bumgardner by Don H. Bumgardner for defendant appellant.*

PARKER, Judge.

[1] Defendant first assigned error to the court's action in ordering a correction made in the bill of indictment. The indictment was returned as a true bill on 2 May 1977. Defendant's trial took place on 23 June 1977. Early in the presentation of the State's evidence it was discovered that the indictment erroneously alleged that the offense occurred on 18 November 1977, a date subsequent to the trial. The district attorney called this mistake to the court's attention and informed the court that the correct date was 1976 rather than 1977. Thereupon the court ordered that the bill be amended to read 1976 instead of 1977. In this there was no error.

G.S. 15-155 contains the following:

No judgment upon any indictment for felony or misdemeanor, whether after verdict, or by confession, or otherwise, shall be stayed or reversed . . . for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened . . . .

Here, time was not of the essence of the offense charged. By virtue of G.S. 15-155 it was not necessary to correct the obvious clerical error in stating the time of the offense in the bill of indictment. Although not necessary, the correction was, nevertheless, proper. The change effected no substantial alteration in the charge set forth in the indictment and therefore was not an amendment prohibited by G.S. 15A-923(e). *State v. Carrington*, 35 N.C. App. 53, 240 S.E. 2d 475 (1978). Defendant could not possibly have been prejudiced either by the mistake in the date as originally alleged in the indictment or by the court's action in ordering its correction. No statute of limitations was involved and defendant did not rely on an alibi. From his own testimony it is apparent that he was completely aware of the nature of the charge against him and the dates on which the transactions giving rise to the charge occurred. His defense was that he had never misrepresented his identity, and neither the mistake in the date alleged in the bill nor its correction by the court in any way hampered him in presenting that defense. *See State v. Hawkins*, 19 N.C. App. 674, 199 S.E. 2d 746 (1973); *State v. Lilley*, 3 N.C. App. 276, 164 S.E. 2d 498 (1968). Defendant's first assignment of error is overruled.

[2] Defendant next assigns error to the denial of his motion to dismiss made at the close of the evidence. In support of this assignment he first contends there was a fatal variance between the allegation in the indictment, whether as originally stated or as corrected, as to the time of the commission of the offense and the State's proof in that regard. He points out that the indictment alleged the offense occurred on 18 November, while the State's evidence showed the account was opened on 14 October. We find no fatal variance. As already pointed out, time was not of the essence of the offense charged. Moreover, the evidence showed that defendant received goods as a result of his false pretense on three separate occasions (14 October, 2 November and 18 November), one being the exact day of the month alleged in the indictment.

[3] Defendant's second contention in support of his assignment of error directed to the denial of his motion to dismiss is that there was insufficient evidence to show an intent on his part to defraud. He argues that at most the evidence shows no more than that he failed to fulfill a promise to pay in the future and that

there was insufficient evidence to show that when he obtained the goods he did not intend to pay for them. These arguments overlook the significance of the evidence that defendant obtained goods on credit by a deliberate misrepresentation of his identity. The crime of obtaining property by means of a false pretense is committed when one obtains a loan of money by falsely representing the nature of the security given, *State v. Roberts*, 189 N.C. 93, 126 S.E. 161 (1925), or by falsely representing that the property pledged as security is free from liens. *State v. Howley*, 220 N.C. 113, 16 S.E. 2d 705 (1941); *See* Annot., 24 A.L.R. 397 (1923), *supplemented in* 52 A.L.R. 1167 (1928). In *State v. Roberts, supra,* conviction was sustained even though there was evidence that a substantial portion of the loan had in fact been repaid, and, as a number of the cases noted in the above cited annotations point out, the crime is committed even though the borrower who obtained the loan by means of the false representation may have intended to repay and may even have honestly believed that he would be able to repay. In accord with the rationale of these cases, we hold that the crime of obtaining property by means of a false pretense may be committed when one obtains goods on credit by a wilful misrepresentation of his identity, quite apart from any intention of the defendant ultimately to pay or not to pay. Thus, even if defendant in this case intended to pay for the goods and had a reasonable belief in his ability to pay, the jury could nevertheless find that the requisite intent to defraud existed when he obtained goods on credit by means of the false pretense. The decision of a merchant to extend credit ordinarily turns upon his evaluation of the financial status and history of the applicant. A misrepresentation of identity of the credit applicant, such as that shown by the State's evidence in this case, deprives the merchant of his usual basis for making a rational decision as to the credit risk involved and may lead him to part with his goods in exchange for an unacceptable risk. Defendant's assignment of error directed to the denial of his motion to dismiss is overruled.

The previous discussion also disposes of defendant's contention that the judge should have instructed the jury that a verdict of guilty would be proper only upon a finding that defendant intended to obtain the goods without paying for them.

In defendant's trial and in the judgment entered we find

No error.

Judges MARTIN and ARNOLD concur.